## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**Z'IONTAE L. WOMACK**, **Substitute Party Plaintiff; as Administrator of the estate of Lionel A. Womack,**

      **Plaintiff,**

      **v.**

**JEREMY RODRIGUEZ,**

      **Defendant.**

**Case No. 2:20-cv-02638-HLT**

### MEMORANDUM AND ORDER

      This is an action under 42 U.S.C. § 1983. Plaintiff is the administrator of Lionel Womack's estate. Plaintiff asserts that Defendant Jeremy Rodriguez violated Womack's Fourth Amendment right to be free from unlawful seizures when Defendant's patrol truck ran over Womack as he was running from police. Defendant moves for summary judgment on qualified immunity. He argues there was no constitutional violation because the contact was accidental and did not violate clearly established law. Doc. 80. The Court finds that there is a material question of fact as to whether the contact was accidental or intentional and, if intentional, finds that such contact constitutes excessive force under clearly established law. The Court thus denies Defendant's motion.

## I.      BACKGROUND

      The Court considers the following undisputed facts for purposes of summary judgment. Citations to "DSOF" refer to Defendant's undisputed statement of facts in Doc. 81. Citations to PSOF refer to Plaintiff's undisputed additional statement of facts in Doc. 86. The Court cites to specific pages of the parties' briefs when facts are disputed.

Plaintiff is the administrator of Womack's estate. DSOF 1.[1] Womack was formerly a law enforcement officer in the Kansas City, Kansas Police Department. PSOF 1. His employment was terminated on August 11, 2020. DSOF 5. Defendant was a part-time deputy for the Kiowa County Sheriff's Department at the time of the incident at issue and was acting within the scope of that employment and under the color of state law. DSOF 3-4.

The Kansas Highway Patrol observed Womack traveling 101 miles per hour in a 65 mile per hour zone in Reno County on August 15, 2020. DSOF 8. Womack fled from officers at speeds of up to 148 miles per hour before the pursuit was terminated. DSOF 9-10.

Shortly thereafter, a Pratt County Sheriff observed Womack's vehicle in Pratt County and tried to initiate a traffic stop. DSOF 11. Officers pursued Womack at speeds in excess of 100 miles per hour, but Womack pulled away. DSOF 11-12. The Pratt County Sheriff observed Womack swerve to avoid stop sticks, drive over a second set of stop sticks, and continue driving at high rates of speed while traveling on the wrong side of the road, accelerating and braking "radically," and losing tires. DSOF 13. Womack did not stop even when his wheel well caught fire. DSOF 14-15. The Pratt County Sheriff's dash camera shows that Womack fled for nearly 30 minutes. DSOF 16. Womack pleaded the Fifth Amendment when asked about this chase at his deposition. DSOF 18-19.

The chase eventually entered Kiowa County. DSOF 20. Defendant had been operating a radar checkpoint in Kiowa County. DSOF 21. He heard on the radio that "Pratt County was en

---

[1]   The Court refers to Lionel Womack as "Womack," and will refer to Plaintiff, who shares the same last name, as "Plaintiff." Womack died in November 2021 after an unrelated incident with police. Doc. 77 at 6. Plaintiff was substituted as a party after Womack died on a consent motion to substitute. *See* Doc. 55; *see also Richard v. City of Wichita, Kan.*, 2016 WL 5341756, at *4 (D. Kan. 2016) ("Plaintiff alleges that she is the special administrator of Stacy's estate and she has alleged a violation of Stacy's constitutional rights. In that capacity, she may maintain a survival action under § 1983."); K.S.A. § 60-1801 ("In addition to the causes of action which survive at common law, causes of action for . . . an injury to the person . . . shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same.").

route to [Kiowa] county in a chase." DSOF 22. Defendant then headed to the Pratt-Kiowa county line where he observed Womack's vehicle headed westbound in the eastbound lane of Highway 54. DSOF 23-24. Womack's vehicle did not have its lights on, all four tires were flat, and it was driving on its rims at about 45-50 miles per hour. DSOF 25-26. Several law enforcement vehicles were following with lights and sirens. DSOF 27. Defendant observed that Womack was not preparing to stop or yield to the law enforcement vehicles following him. DSOF 29. Defendant began following Womack. DSOF 30. Defendant witnessed Womack violate several Kansas laws, including fleeing or attempting to elude law enforcement and reckless driving. *See* DSOF 31. Defendant was only involved in the last few minutes of the chase involving Womack. PSOF 2. Defendant did not know why Pratt County initiated the pursuit or the name of the person being pursued. PSOF 3.

Womack traveled in Kiowa County for several miles and eventually abandoned his vehicle and began running through a field. DSOF 33-35. Womack was shirtless and unarmed as he ran through the field. PSOF 7. Womack's hands were visible at times because he pumped his arms while running. PSOF 12. But at other times, Defendant observed Womack's hands to be concealed in front of his body. DSOF 36-38. The video confirms that at times Womack's hands were visible, and at other times they were in front of him. *See* Docs. 82-83, 88. But neither Defendant nor any other officer ordered Womack to show or drop a weapon. PSOF 14.

There were some lights in the distance, which Defendant thought could be residences. DSOF 43. Other officers testified that, depending on the direction, the nearest house was between half a mile to five miles away. PSOF 16; Doc. 87 at 4. A resident living north of the field did call 911 to express concern about police activity in the field. DSOF 44.

Defendant, still in his patrol truck, followed Womack, who was now on foot, into the field. *See* DSOF 45. Defendant drove close to Womack and told him to stop and get on the ground or else he would be tased. *Id*. Womack did not comply. DSOF 46. Womack did not make an aggressive movement or turn towards officers. PSOF 10. He was running away from law enforcement vehicles. PSOF 11.

The parties dispute the condition of the field. Defendant contends it had loose dirt and deep ruts and ravines because it had been plowed recently. DSOF 49. Plaintiff contends it was relatively smooth and Defendant did not have trouble driving across the terrain. Doc. 86 at 8. The Court has reviewed the video footage from the dash and body cameras. *See* Docs. 82-83, 88. The ground is uneven but it's not clear whether Defendant's patrol truck had difficulty navigating the terrain.

The parties generally agree on the events that happened next but disagree on the intent and motivations behind those events. Defendant attempted to turn his truck in front of Womack to get him to stop or turn around, but Womack moved out of the way and kept running. DSOF 47. Plaintiff contends Defendant was trying to run over Womack but was unsuccessful. *See* Doc. 86 at 8.

Defendant tried a similar maneuver a second time to stop Womack and turn him back toward law enforcement. DSOF 53. Defendant contends he was again trying to drive his truck in front of Womack, not towards him, but lost control due to the terrain. DSOF 54-55. Plaintiff contends that Defendant made a hand-over-hand motion with his steering wheel and turned his tires toward Womack, causing him to drive over Womack. Doc. 86 at 9. Womack did not change direction the second time Defendant attempted the maneuver. DSOF 56. Defendant knocked Womack down with the front left part of his truck, and the tire ran over Womack. PSOF 28.

Defendant tried to reverse his truck after hitting Womack. PSOF 32. The parties dispute whether this was an attempt to run over Womack again.

Defendant then got out of the truck. Womack was lying on the ground and asked: "Why did you run me over?" PSOF 34. Defendant replied: "I was trying to get you to stop." PSOF 35. Another officer called Womack a "little bitch" while Womack was on the ground. PSOF 38.[2]

Defendant contends the contact between Womack and his truck was accidental. DSOF 57-59. Plaintiff contends Defendant intentionally ran over Womack. Doc. 86 at 10. One minute and 20 seconds elapsed between Womack abandoning his vehicle and Defendant hitting him with the truck. PSOF 5.

Defendant did not prepare an accident report about the incident even though it is standard procedure to do so. PSOF 39-40. Womack was handcuffed and placed under arrest. PSOF 41. Womack was transported to the hospital via ambulance. PSOF 42. But he was taken out of handcuffs and told he was no longer under arrest. *Id.* The Kiowa County Sheriff also did not assign anyone to monitor Womack while he was at the hospital. PSOF 43. Womack was not booked into jail. PSOF 44. Womack's injuries, if any, are not clear from the current record.

The parties agree (or do not controvert) the following. The use of deadly force was not justified as Womack ran through the field. PSOF 6. Deadly force would not have been justified even if Womack had been armed. PSOF 9, 48. A sheriff's patrol truck can be used as deadly force. PSOF 45. It would have been excessive force if Defendant intentionally ran over Womack. PSOF 47.

---

[2]   Womack testified at his deposition that he recalled being called a racial slur while he was in the field, though he could not remember when it occurred or who said it. *See* Doc. 86-3 at 6-7. Plaintiff has not directed the Court to any video footage that corroborates this incident.

Plaintiff asserts that Defendant violated Womack's Fourth Amendment right to be free from unreasonable seizure when Defendant ran over Womack with his patrol truck. Doc. 77 at 7. Defendant asserts qualified immunity. *Id.*

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party in applying this standard. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III.   ANALYSIS

Defendant seeks summary judgment on qualified immunity. Doc. 81 at 15. Qualified immunity is a powerful defense for public servants that protects "all but the plainly incompetent or those who knowingly violate the law" from the burdens of lawsuits. *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (internal quotation and citation omitted). A defendant may assert qualified immunity and the plaintiff then bears the burden of showing (1) that the defendant's actions violated a constitutional right, and (2) that the right was clearly established at the time of the violation. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018).

A.      **Constitutional Violation**

Plaintiff argues that Defendant violated Womack's Fourth Amendment right to be free from unreasonable search and seizure when Defendant used excessive force against Womack. Doc. 77 at 7. An excessive force claim under the Fourth Amendment requires a showing (1) that a seizure occurred and (2) that the seizure was unreasonable. *Reavis Estate of Coale v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020).

1.      **Whether a Seizure Occurred**

The initial issue is whether a seizure occurred. Defendant contends a seizure did not occur because the patrol truck's contact with Womack was accidental. Doc. 81 at 28. As Defendant explains, a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement <u>through means intentionally applied</u>." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original). Accidental contact does not suffice. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) ("[N]o Fourth Amendment seizure would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." (quoting *Brower*, 489 U.S. at 597)). Plaintiff disagrees and argues that a seizure did occur because the contact was intentional.

Whether the contact was accidental or intentional is a disputed factual question. Defendant testified at his deposition that it was accidental, that he only intended to pull in front of Womack to cut off his path as he had done once before, and that the uneven ground caused him to hit Womack instead. *See* Doc. 81-1 at 20, 22-23.[3] But a reasonable jury could conclude that the contact

---

[3]   Defendant argues that he is entitled to an adverse inference for any deposition question to which Womack invoked his Fifth Amendment rights. Doc. 81 at 13-15. It appears that Womack invoked that right as to questions about the initial chase that preceded the incident in the field because he had charges pending about that chase. *See id.*; *see also* Doc. 86 at 17. It's not entirely clear what adverse inference Defendant seeks, other than to prevent Plaintiff

with Womack was intentional. It is not obvious that Defendant was trying to circle in front of Womack based on the video footage taken from another officer's dash camera. *See Martin v. City of San Jose*, 2020 WL 5910078, at *10 (N.D. Cal. 2020) (finding that jury could conclude hitting suspect was intentional based on video showing officer driving closely and tracking changes in direction rather than speeding past to cut off the suspect further down the trail). Rather, the footage could lead a reasonable jury to conclude that Defendant turned the truck and drove directly at Womack. *See Gaillard v. Commins*, 562 F. App'x 870, 873 (11th Cir. 2014) ("Viewed in the light most favorable to Plaintiff Gaillard, however, the record, which includes a video taken from Officer Commins's police vehicle, would support factual findings that Officer Commins (1) intentionally turned and accelerated his car directly towards the unarmed Gaillard and (2) intentionally struck Gaillard with the vehicle in an effort to stop Gaillard's flight and to make an arrest."); *cf. Robinson v. City of New York*, 2018 WL 4344949, at *4 (E.D.N.Y. 2018) (finding no evidence of intentional contact where the police vehicle never turned or accelerated toward the plaintiff). And there is also the conversation between Defendant and Womack immediately after contact. Womack asked why Defendant ran over him, and Defendant replied that "I was trying to get you to stop." *See* PSOF 35. A reasonable jury could understand Defendant's statement to mean that he intended to hit Womack.

In sum, a reasonable jury could conclude that the contact was intentional and was thus a seizure under the Fourth Amendment. *See McCormack v. Town of Whitman*, 2013 WL 1187093, at *7 (D. Mass. 2013) ("A collision between a police cruiser and a suspect constitutes a seizure only when plaintiff submits evidence from which a reasonable factfinder could conclude that

---

from denying that Womack was the driver who led officers on a high-speed chase before he ended up in the field. Doc. 81 at 14-15. These facts are generally undisputed, however. *See* DSOF 8-17. Accordingly, the Court does not reach the question of whether an adverse inference is appropriate at this stage. Nor is that testimony relevant to the question of whether the contact was accidental or intentional.

collision was an intended means to prevent flight, rather than an accidental consequence of pursuit."); *see also Clark v. Thomas*, 505 F. Supp. 2d 884, 896 (D. Kan. 2007) ("If Thomas did intentionally strike plaintiff with his vehicle, then a seizure occurred."); *Robinson*, 2018 WL 4344949, at *4 ("Intentionally striking a fleeing suspect with a police vehicle is therefore a seizure.").

### 2. Reasonableness

Because there are facts from which a jury could find that Defendant seized Womack by intentionally hitting Womack with the patrol vehicle, the Court next considers whether that use of force would have been reasonable under the Fourth Amendment. "When a plaintiff claims that officers used unreasonable force during a seizure, we apply the Fourth Amendment's objective reasonableness standard." *Arnold v. City of Olathe, Kan.*, 35 F.4th 778, 788 (10th Cir. 2022). Reasonableness is based on the totality of the circumstances from the perspective of a reasonable officer. *Id.* Courts generally rely on three factors to determine reasonableness: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the individual is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation omitted).

Here, the Court does not need to analyze whether the force used was reasonable under the circumstances because Defendant concedes that <u>intentionally</u> running over Womack would <u>not</u> have been objectively reasonable. Doc. 87 at 11 ("[Defendant] does not argue that intentionally running over Womack in the field would have been objectively reasonable (though the caselaw likely supports that argument)."); *id.* at 7 (Defendant stating it is "[u]ncontroverted for purposes of this motion" that "[i]f Defendant Rodriguez intentionally ran over Mr. Womack with his patrol truck, that was excessive force" (responding to PSOF 47)).

The Court concludes that Defendant is not entitled to qualified immunity on the first prong of the analysis because there is a fact question about whether the contact was accidental or intentional and Defendant concedes that intentionally running over Womack would have been objectively unreasonable. Stated differently, there are material questions of fact about whether a constitutional violation occurred.[4]

## B.   Clearly Established

The Court next considers whether Plaintiff has demonstrated that the constitutional violation was clearly established. "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf*, 884 F.3d at 944 (internal quotation and citation omitted).[5] There need not be a case directly on point. *Lewis*, 48 F.4th at 1198. Rather, the focus is on whether "a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation and citation omitted). A plaintiff cannot rely on the general existence of a right in the usual case. *See Knopf*, 884 F.3d at 944. "But general statements of the law are not inherently incapable of giving fair and clear warning, and . . . a

---

[4]   Defendant argues separately that it was reasonable to attempt to simply block (but not hit) Womack with the truck. Doc. 81 at 23. Plaintiff briefly argues that this still would have been unreasonable deadly force. Doc. 86 at 22. The Court is highly dubious that simply blocking the path of a fleeing suspect after an extended high-speed chase would be unreasonable. *See Robinson*, 2018 WL 4344949, at *5 ("I am aware of no precedent indicating that a suspect running from police on foot has a right against having his path of flight blocked with a stopped (or nearly stopped) police vehicle."). But the question is academic because Defendant <u>did</u> hit Womack, and the reasonableness of that force is what is at issue.

[5]   Defendant suggests that the Supreme Court "changed its lead" on what can constitute clearly established authority in 2021 when it "noted the open question as to whether controlling circuit precedent could even serve as the basis for clearly established law." Doc. 81 at 29. But the Supreme Court opinion cited merely assumed without explicitly deciding that circuit precedent could satisfy the "clearly established law" standard and did not change the law on this point. As Defendant notes, this position "is consistent with the approach" taken by the Supreme Court for years, which would suggest nothing has changed. *See id.* at 29 n. 7. Further, the Tenth Circuit has continued to state that clearly established law can be based on controlling circuit precedent. *See Lewis v. City of Edmond*, 48 F.4th 1193, 1198 (10th Cir. 2022). Accordingly, the Court declines Defendant's invitation to limit itself to "Supreme Court precedent in determining whether there is clearly established law addressing the circumstances involved in the case." *See* Doc. 81 at 30. Though, as discussed below, Supreme Court authority does exist.

general constitutional rule . . . may apply with obvious clarity to the specific conduct in question . . . ." *Hope*, 536 U.S. at 741 (internal quotation and citation omitted); *see also White v. Pauly*, 580 U.S. 73, 80 (2017) ("[W]e have held that [the excessive-force cases of] *Garner* and *Graham* do not by themselves create clearly established law outside 'an obvious case.'").

Plaintiff argues that this is an "obvious case" and relies on District of Kansas, Tenth Circuit, and Supreme Court authority to argue that the constitutional violation alleged in this case was clearly established. Doc. 86 at 36-40. The Court agrees that the authorities cited by Plaintiff meet her burden under the "clearly established" prong of the qualified-immunity analysis for this case.

*Clark v. Thomas*, a District of Kansas case, has similar—if not identical—facts to this case. The officers in *Clark* tried to stop the plaintiff for traffic violations. 505 F. Supp. 2d at 887. The plaintiff didn't stop and led officers on a chase, which the defendant later joined. *Id.* The chase involved high speeds and traffic violations. *Id*. The plaintiff subsequently left his vehicle and fled on foot. *Id.* at 888. While some officers chased the plaintiff on foot, the defendant followed in his vehicle and struck the plaintiff. *Id.* Video showed the defendant's vehicle head directly at the plaintiff, though the defendant testified that he had only sought to cut off the plaintiff's path. *Id.* The plaintiff was not armed, had not made any threats or threatening actions towards officers, and there were no bystanders. *Id.* Like here, *Clark* found that there were facts from which a jury could conclude that the defendant intended to strike the plaintiff. *Id.* at 895.

The defendant asserted qualified immunity, but *Clark* found "that to the extent that plaintiff is able to prove that [the defendant] used excessive force and violated the Fourth Amendment in striking plaintiff, the right to be free from such conduct was in fact 'clearly established.'" *Id.* at 896. *Clark* relied on *Tennessee v. Garner*, 471 U.S. 1 (1985), in reaching this conclusion. *Garner* held that "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the

circumstances, is constitutionally unreasonable." *Id.* at 11. *Clark* recognized that although *Garner* does not satisfy the "clearly established" prong in every excessive force case, it may very well do so in an "obvious case." *Clark*, 505 F. Supp. 2d at 897 (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). *Clark* found that its facts did "provide[] an example of the 'obvious case' mentioned by the Supreme Court." *Id.* at 897. *Clark* thus concluded "that a reasonable officer would have understood in November 2004 that the particular conduct complained of here—defendant Thomas's unreasonably and unnecessarily striking plaintiff with his police vehicle, without warning, while plaintiff fled officers on foot without presenting any threat to those officers—is prohibited under the Fourth Amendment's reasonableness standard." *Id.*

The Court agrees with the reasoning in *Clark* and finds that the facts of this case are also an "obvious case."[6] Here, Womack was running through a field wearing only shorts and no shirt. Although his hands were initially in front of him when he began running, at the time he was struck, at least one video shows that they were visible as Womack pumped his arms at his side in a normal running motion. Thus, at most, it was only speculation that he was armed. *See Cordova v. Aragon*, 569 F.3d 1183, 1190 (10th Cir. 2009) ("The threat must have been more than a mere possibility."). There are no facts that Womack made any threats or threatening gestures to anyone as he was running in the field. And the only offenses Womack was suspected of were those associated with the chase. Although those offenses are undoubtedly serious, the vehicle chase and any attendant dangers had concluded. There were no bystanders around, and any structures in the area were still quite a distance away. Given these circumstances, it would have been obvious to a reasonable officer that intentionally striking Womack with his patrol truck to get him to stop would have been

---

[6] As a district-court case, the Court does not rely on *Clark* itself as "clearly established" precedent. But it finds *Clark*'s reasoning persuasive that the conduct at issue, which is identical to the conduct here, is an "obvious case."

unreasonable under the Fourth Amendment. *See Martin*, 2020 WL 5910078, at \*14 (noting the "obviousness" of a Fourth Amendment violation where an officer intentionally strikes a suspect with his car and suggesting that the lack of cases directly on point is "perhaps because such conduct is so out of bounds there is no such prior case").

Beyond the "obviousness," the Court finds that authoritative caselaw involving analogous facts put Defendant on notice that intentionally striking Womack with his patrol truck would have been unconstitutional. *See Reavis*, 967 F.3d at 992 ("Nevertheless, our analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law." (internal quotation and citation omitted)). In *Garner*, officers were dispatched to investigate reports of a "prowler." *Garner*, 471 U.S. at 3-4. The officers then saw someone flee the house and jump a fence. *Id.* at 4. The officer saw no signs of a weapon but worried the individual would elude capture. *Id.* So the officer shot the individual to prevent him from escaping. *Id.* As explained above, the Supreme Court held that deadly force was not warranted: "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id*. at 11.

*Reavis*, too, is analogous Tenth Circuit authority. There, the decedent was in his vehicle and the officer was on foot. 967 F.3d at 982-83. The decedent refused to show his hands and accelerated his vehicle in the direction of the officer. *Id.* at 983. The officer shot and killed the decedent as the vehicle passed. *Id.* The Tenth Circuit found excessive force because the threat had passed by the time the shots were fired. *Id.* at 990-92. On the second prong of the qualified-immunity analysis, the Tenth Circuit relied on past precedent to find that "it would be clear to every officer that the use of deadly force to stop a fleeing vehicle is unreasonable unless there is

an immediate threat of harm to himself or others." *Id.* at 995;[7] *see also Cordova*, 569 F.3d at 1190 ("We cannot say . . . that the general risks created by a motorist's fleeing from the police are, without more, enough to justify a shooting that is nearly certain to cause that suspect's death.").

This case shares similarities with *Garner* and *Reavis*. Here, Womack had been involved in a vehicle chase. But it had ended, and Womack was fleeing on foot. There were no obvious signs that Womack was armed, he was no longer an apparent threat to bystanders or officers, and Defendant ran over Womack "to get [him] to stop." Although Defendant used his patrol truck and not a firearm, the potential harm to Womack was the same because Womack was on foot. *See Cordova*, 569 F.3d at 1189 (noting that deadly force can take many forms, including ramming).

The Court acknowledges that neither *Garner* nor *Reavis* are factually identical to the facts of this case in terms of the positioning of the relevant players and the type of force used. But both cases demonstrate that deadly force is not appropriate just to stop a suspect from fleeing or where there is no immediate danger or threat to officers or bystanders. *See Finch v. Rapp*, 38 F.4th 1234, 1243 (10th Cir. 2022) (noting that despite the lack of cases with identical facts, "the cases relied on by the district court establish that an officer, even when responding to a dangerous reported situation, may not shoot an unarmed and unthreatening suspect").[8] Thus, even if this case was not

---

[7]   *Reavis* was issued a few weeks before the incident in this case.

[8]   The Tenth Circuit recently issued *Osborn v. Meitzen*, 2022 WL 17428958 (10th Cir. 2022). *Osborn* involved an officer who was alleged to have intentionally swerved into the path of a fleeing motorcycle. After the district court granted summary judgment, the plaintiff appealed. The Tenth Circuit concluded that the plaintiff had waived the argument that the case was a "rare obvious" case where the officer would have known his actions violated clearly established law, and thus did not address it. *Id.* at *2-3. The dissent, however, contended that the argument had been preserved and concluded that there was an obvious constitutional violation under the facts, presuming the collision was intentional. *Id.* at *6 (Phillips, J. dissenting) ("The 'obvious clarity' here stems from the minimal (if any) danger to the officers or others when [the officer] intentionally used such a high degree of deadly force."). The dissent also noted that the officers conceded that intentional contact would have been outside of constitutional bounds and that under those "egregious circumstances, [the plaintiff] need not furnish a case in which an officer intentionally crashed a motorcyclist." *Id.* at *7 (Phillips, J. dissenting). To this last point, the Court notes that Defendant concedes that <u>intentionally</u> running over Womack would have been excessive force. Given that concession, it is difficult to reconcile any claim that the law is not clearly established on this point.

an "obvious case," the facts of *Garner* and *Reavis* are sufficiently analogous to put Defendant on notice that intentionally hitting Womack with his patrol truck under the circumstances of this case would be unconstitutional. *See Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) ("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." (internal quotation and citation omitted)).

Other decisions from outside the Tenth Circuit have likewise found excessive force in similar circumstances. *See Knopf*, 884 F.3d at 944 ("A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, <u>or the weight of authority from other courts</u>, existing at the time of the alleged violation." (emphasis added) (internal quotation and citation omitted)). The Eleventh Circuit found a similar use of force under comparable circumstances unreasonable:

> To that end, we conclude that, in the version of events most favorable to Plaintiff Gaillard, the evidentiary record would allow a jury to find Officer Commins's action objectively unreasonable under the circumstances. Importantly, this is not a case where a high-speed car chase remained in progress. Instead, the suspects' vehicle spun off the road and came to a complete stop. An unarmed Gaillard then abandoned the vehicle and fled on foot. In his deposition, Officer Commins admitted that when he saw Gaillard running, Gaillard 'wasn't brandishing a weapon, putting a third party at risk [or] another officer at risk.'

*Gaillard*, 562 F. App'x at 875. Like *Clark*, the Eleventh Circuit found that *Garner* provided clearly established law. *Id.* at 876-77 ("In that scenario, *Garner* clearly put Officer Commins on notice that the use of deadly force would be objectively unreasonable . . . ."). Similarly, the Sixth Circuit has found that intentionally ramming a motorcyclist under similar circumstances constitutes an obvious case of excessive force: "It is only common sense—and obviously so—that intentionally

ramming a motorcycle with a police cruiser involves the application of potentially deadly force." *Walker v. Davis*, 649 F.3d 502, 503-04 (6th Cir. 2011).

The Court concludes that the alleged constitutional violation in this case was clearly established based on these authorities coupled with the relative seriousness of intentionally[9] hitting a fleeing suspect with a patrol truck. Defendant is therefore not entitled to qualified immunity.

## IV.    CONCLUSION

The Court finds that there is a material question of fact as to whether Defendant accidentally or intentionally hit Womack with his patrol truck. If a jury found that Defendant intentionally hit Womack, the parties agree for purposes of summary judgment that this would be unreasonable and would constitute excessive force. The clearly established law supports such a conclusion. Accordingly, Defendant is not entitled to qualified immunity.

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 80) is DENIED.

IT IS SO ORDERED.

Dated: February 15, 2023                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE

---

[9]    The Court acknowledges Defendant's position that the contact with Womack was accidental. As discussed above, however, that is a factual dispute. And on summary judgment, the Court must construe the facts most favorably to the non-moving party. *See Reavis*, 967 F.3d at 992.